UNITED STATED DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| CHASITY L. KING, an individual, ) <br> on behalf of herself and others ) <br> similarly situated, ) <br> ) <br>       Plaintiff, ) <br> ) <br> v. ) <br> ) <br> HERITAGE ENTERPRISES, INC. ) <br> ) <br>       Defendant. ) | No.:  **10-3039** <br><br> **JURY TRIAL DEMANDED** |

**COLLECTIVE ACTION COMPLAINT**

Plaintiff, Chasity L. King, on behalf of herself and others similarly situated alleges as follows:

1. This is a collective action under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), brought on behalf of all persons who, at any time during the past three years and up until the date of entry of judgment are or were employed by Defendant (as hereinafter defined) and whose pay was subject to an automatic meal break deduction even when those persons performed compensable work during such unpaid "meal break."

2. As explained herein, under applicable employment laws, Plaintiff and the Class (defined in paragraph 35 below) are entitled to compensation for all hours worked. Despite this plain truth, and although Defendant regularly required Plaintiff and the Class to work through all or part of their meal break, Defendant subjected Plaintiff and the Class to automatic deductions for their scheduled meal breaks.

1

3. Accordingly, Plaintiff and the Class were illegally under-compensated for their work.

## JURISDICTION AND VENUE

4. This Court has original jurisdiction over Plaintiff's claims pursuant to 29 U.S.C. §216(b) and 28 U.S.C. §1331.

5. Venue for this action properly lies in the Central District of Illinois, pursuant to 28 U.S.C. §1391(b), because the claim arose in this judicial district.

## PARTIES

### A. PLAINTIFF

6. Chasity L. King is an adult individual residing in Springfield, Illinois. Plaintiff was employed by Defendant from approximately October, 2003 through January 12, 2009. Plaintiff worked at Defendant's Heritage Manor – Springfield, located at 900 N. Rutledge, Springfield, Illinois. She spent her time working as a licensed practical nurse ("LPN") nurse at the facility. While working for Defendant, Plaintiff was regularly required to perform compensable work during unpaid "meal breaks."

7. Plaintiff consents in writing to be a party to this collective action pursuant to 29 U.S.C. §216(b).

### B. DEFENDANT

8. Heritage Enterprises Inc. ("Heritage Enterprises") is one of the largest operators of nursing home and retirement homes in the State of Illinois. It operates approximately thirty-eight skilled nursing facilities, many under the Heritage Manor moniker, thirteen of which are either managed by Heritage Enterprises or are joint-ventures of the Company. Heritage

Enterprises corporate address is 115 W. Jefferson St. Suite 401, P.O. Box 3188, Bloomington, IL.

9. Heritage Manor – Springfield is a nursing home operated by Heritage Enterprises. According to the Company's website, Heritage Manor – Springfield's subacute unit (ContinuCare) is a joint venture between Heritage Enterprises and Memorial Medical Center.

10. Heritage Enterprises and its various operating arms, including Heritage Manor - Springfield, are centrally controlled through, for example, common membership, governing bodies, trustees and/or officers and benefit plans.

11. Upon information and belief, at all times, the wage and hour and all related employee compensation policies of Heritage Manor - Springfield, and Heritage Enterprise's other nursing facilities, are and were centrally and collectively dictated, controlled, and ratified.

12. For example, Heritage Enterprises touts that it has approximately seventy (70) dedicated individuals operating from its corporate office providing support to the nursing facilities in the following areas: Operations, Nursing Services, Human Resources, and Corporate Services & Finance. The corporate office provides "the individual Heritage facilities throughout Illinois" with supplies, materials, and information – essentially "whatever is needed to keep them running and serving their residents."

13. For purposes of this complaint, Heritage Enterprises and its operating facilities, join-ventures, and managed facilities are hereinafter collectively referred to as "Defendant."

14. Upon information and belief, Defendant has hundreds of employees.

## FACTUAL BACKGROUND

15. This action is filed on behalf of all non-exempt employees of Defendant whose pay is subject to an automatic meal break deduction even when they perform compensable work

during their meal breaks. These persons include, but are not limited to, secretaries, housekeepers, custodians, clerks, porters, registered nurses, licensed practical nurses, nurses' aides, administrative assistants, anesthetists, clinicians, medical coders, medical underwriters, nurse case managers, nurse interns, nurse practitioners, practice supervisors, professional staff nurses, quality coordinators, resource pool nurses, respiratory therapists, senior research associates, operating room coordinators, surgical specialists, admissions officers, student nurse technicians, trainers, and transcriptionists employed at any of Defendant's facilities during the three years preceding the filing of this action.

16.     Given the demands of the health care industry and staffing shortages, Defendant knows that in order to accomplish the tasks it assigns to Plaintiff and the Class, Plaintiff and the Class have to work through their unpaid "meal breaks."

17.     Under the "Meal Break Deduction Policy," Defendant's computerized time and attendance system automatically deducts a 30 minute meal period per work shift.

18.     Upon information and belief, Defendant maintains the "Meal Break Deduction Policy" at all of its facilities. Accordingly, all non-exempt employees of Defendant are subjected to Defendant's "Meal Break Deduction Policy."

19.     Under Defendant's "Meal Break Deduction Policy," Defendant improperly and illegally shifts the burden to Plaintiff and the Class to ensure that non-qualifying "meal breaks" are not deducted from their pay.

20.     Plaintiff and the Class often perform compensable work for Defendant during their uncompensated "meal breaks."

21. Defendant does not ensure that Plaintiff and the Class are completely relieved of their work duties during their uncompensated "meal breaks." As such, Plaintiff and the Class are routinely not completely relieved of their job duties during their uncompensated "meal breaks."

22. Plaintiff and the Class routinely are required to stay at their duty post during their uncompensated "meal breaks."

23. Defendant does not prohibit Plaintiff and the Class from working during their "meal breaks" and routinely suffers or permits Plaintiff and the Class to perform such work.

24. Further, Defendant fails to ensure that unauthorized work is not being performed during employee "meal breaks."

25. In fact, although Defendant automatically deducts 30 minute meal periods, Defendant expects Plaintiff and the Class to be available to work throughout their shifts and consistently require its employees to work during unpaid "meal breaks."

26. Plaintiff and the Class are expected to eat without any change in demands from patients or relief by additional staff. Indeed, Plaintiff and the Class are often required to respond to pages, as well as requests by patients, co-workers and management, during unpaid "meal breaks."

27. Defendant knows and/or has reason to believe that Plaintiff and the Class perform work during their unpaid "meal breaks." Indicative of this, Plaintiff and the Class perform work for Defendant, on Defendant's premises, in plain sight, and often at management's request (and at times in view of management) during their unpaid "meal breaks."

28. Even though Defendant knows that Plaintiff and the Class are working during "meal breaks," Defendant fails to compensate Plaintiff and the Class for their work, electing instead to accept the benefits of Plaintiff and the Class' uncompensated work.

29. Furthermore, in approximately May/June 2008, Defendant changed their employment practices to require Plaintiff and the Class to "clock out" for their lunch break, irrespective of whether or not they actually took a full, uninterrupted lunch break.

30. Moreover, Defendant required its employees in early 2008 to begin clocking in for work at or around the same time, and not when the employee actually began working. Additionally, on occasion, Plaintiff worked beyond her scheduled shift without receiving additional remuneration for this time worked.

31. Due to Defendant's aforementioned employment practices, including specifically wherein it automatically deducts thirty minutes for meal breaks from Plaintiff and the Class ' wages, Plaintiff and the Class often worked in excess of forty hours per week and were denied statutory overtime wages.

32. Evidence generally reflecting the number of uncompensated hours worked by each class member and the compensation rates for the relevant work periods is in the possession of Defendant.

33. While Plaintiff is unable to state at this time the exact amount owed to the class, Plaintiff believes that such information will become available during the course of discovery. Irrespective of the foregoing, when an employer fails to keep complete and accurate time records, employees may establish the hours worked solely by their testimony and the burden of overcoming such testimony shifts to the employer. *See Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680 (1946).

## COLLECTIVE ACTION ALLEGATIONS

34. The preceding paragraphs are incorporated by reference as if the same were fully set forth herein.

35.     Plaintiff brings this FLSA collective action on behalf of herself and all other persons similarly situated pursuant to 29 U.S.C. §§ 207 and 216(b), specifically, as follows:

> All persons employed within the three years preceding the filing of this action by Defendant, whose pay was subject to an automatic 30 minute meal period deduction even when they performed compensable work during the unpaid "meal break" (the "Class").

Upon information and belief, Plaintiff believes that the definition of the class will be further refined during the course of discovery.

36.     Prior to discovery, Plaintiff is unable to state the exact number of the Class but estimates the class to exceed several thousand individuals.

37.     There are questions of law and fact common to the class which predominate over any questions affecting individual members only. These factual and legal questions include *inter alia*:

  a.  Whether Plaintiff and the Class were expected to and/or mandated to regularly work during unpaid meal breaks;

  b.  Whether Defendant failed to pay Plaintiff and the Class for all hours that they worked because of the fact that they automatically deducted 30 minute meal periods despite the fact that Plaintiff and the Class regularly performed compensable work during "meal breaks";

  c.  Whether Defendant failed to pay Plaintiff and the Class all overtime compensation due to them by virtue of their "Meal Break Deduction Policy";

  d.  The correct statute of limitations for Plaintiff's and the Class' claims;

  e.  The correct method of calculating back overtime pay;

  f.  Whether Plaintiff and the Class are entitled to compensatory damages, and if so, the means of measuring such damages;

  g.  Whether Plaintiff and the Class are entitled to restitution;

  h.  Whether Defendant is liable for pre-judgment interest; and

      i.      Whether Defendant is liable for attorney's fees and costs.

.

38.      Defendant has acted and refused to act on grounds generally applicable to the class.

39.      The claims of the representative Plaintiff are typical of the claims of the class in that Plaintiff was denied overtime wages as a result of Defendant's uniform policy of not compensating its non-exempt employees for all hours worked.  This is the predominant issue which pertains to the claims of each and every member of the Class.

40.      The collective action mechanism is superior to other available methods for a fair and efficient adjudication of the controversy.

41.      Plaintiff will fairly and adequately protect the interests of the class, as her interests are in alignment with those of the class, *i.e.*, to prove and then eradicate Defendant's illegal employment practice of not paying overtime wages to their non-exempt employees.

42.      Counsel for Plaintiff will adequately protect the interests of the class.  Plaintiff has retained counsel experienced in class action litigation in general, and employment litigation in particular.  Indeed, counsel has previously served as class counsel in employment litigation.

43.      Plaintiff and the Class she represents have suffered and will continue to suffer irreparable damage from the illegal policy, practice and custom regarding Defendant's pay practices.

44.      Defendant has engaged in a continuing violation of the FLSA.

45.      Plaintiff, as well as the individuals she represents, was denied overtime wages as a result of Defendant's pay practices.  Defendant's action in denying overtime wages to Plaintiff was intentional and constitutes a willful violation of the FLSA.

**FLSA OVERTIME VIOLATION**

46. The allegations set forth in the preceding paragraphs are incorporated herein.

47. At all relevant times, Defendant has been an employer engaged in interstate commerce consistent with 29 U.S.C. §§206(a) and 207(a). At all relevant times, Defendant employed Plaintiff and each member of the collective action class consistent with the terms of the FLSA.

48. At all relevant times, Defendant has had annual gross revenues in excess of $500,000.00.

49. As a consequence of Defendant's employment practices whereby it automatically deducts thirty minutes for meal breaks from the pay of hourly, non-exempt employees, Plaintiff and the Class were denied statutory overtime wages.

50. Plaintiff and the Class were employees of Defendant within the meaning of the FLSA and, as such, were entitled to the benefits of the FLSA's overtime wage requirements.

51. Defendant's policy of denying Plaintiff and the Class overtime wages represents and results in a violation of the FLSA's minimum wage requirements.

52. Defendant has failed to pay appropriate overtime wages under the FLSA.

WHEREFORE, Plaintiff respectfully requests:

A. All applicable statutory damages;

B. A Declaration that Defendant has violated the FLSA;

C. An Order designating this action as a collective action and directing the issuance of notice pursuant to 29 U.S.C. §216(b);

D. An Order appointing Plaintiff and her counsel to represent those individuals opting in to the collective action;

E. An Order awarding counsel for Plaintiff reasonable attorneys' fees and costs; and

F. Any further relief which the Court deems appropriate under the circumstances.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated February 16, 2010                             Respectfully submitted,


By  /s/  *Marvin A. Miller*
Marvin A. Miller
Matthew E. Van Tine
MILLER LAW LLC
115 South LaSalle Street
Suite 2910
Chicago, IL 60603
Telephone: (312) 332-3400
Facsimile: (312) 676-2676
Email: mmiller@millerlawllc.com
          mvantine@millerlawllc.com

FARUQI & FARUQI, L.L.P.
Kendall S. Zylstra
Gerald D. Wells III
Stephen E. Connolly
2600 Philmont Avenue, Suite 324
Huntingdon Valley, PA 19006
Telephone: (215) 914-2460
Facsimile: (215) 914-2462
Email: kzylstra@faruqilaw.com
          jwells@faruqilaw.com
          sconnolly@faruqilaw.com

CARLSON LYNCH, L.T.D.
Gary Lynch
Bruce Carlson
36 N. Jefferson Street
P.O. Box 7635
New Castle, PA 16107
Telephone: (724) 656-1555
Facsimile: (724) 656-1556
Email: glynch@carlsonlynch.com
          bcarlson@carlsonlynch.com

*Attorneys for the Plaintiff*